Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| ASOCIACIÓN SANTA TERESITA PARK BOULEVARD #334, INC.<br><br>Recurridos - Apelados<br><br>v.<br><br>WILFREDO FRANCISCO REY CAPELLA, WILFREDO FRANCISCO REY GONZÁLEZ Y MARÍA ISABEL REY GONZÁLEZ<br><br>Peticionarios - Apelantes | KLCE202401273<br><br>Consolidado con:<br><br>KLAN202401067 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2023CV05651<br><br>Sobre: COBRO DE DINERO - ORDINARIO |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**S E N T E N C I A**

En San Juan, Puerto Rico, a 5 de febrero de 2025.

El pasado 22 de noviembre de 2024, compareció ante *nos*, Wilfredo Francisco Rey Capella, Wilfredo Francisco Rey González y María Isabel Rey González (parte apelante) y nos solicitaron que revisemos la *Resolución* emitida el 23 de octubre de 2024 y notificada el día siguiente por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan. Mediante el referido dictamen, el TPI condenó a la parte apelante al pago de quinientos setenta dólares y treinta y seis centavos ($570.36) a favor de la Asociación Santa Teresita Park Boulevard #334, Inc. (parte apelada) por concepto de costas y gastos.

Posteriormente, el 2 de diciembre de 2024, el apelante presentó un recurso de apelación. En su recurso de apelación, nos solicitó que revisáramos la *Sentencia* emitida el 1 de octubre de 2024, y notificada el 3 de octubre de 2024. Mediante dicha *Sentencia*, el TPI declaró *Con Lugar* la solicitud de sentencia sumaria presentada por la parte apelada y, en consecuencia, condenó a la

Número Identificador

SEN2025 _____

parte apelante a pagar a la parte apelada la suma de ocho mil veintiocho dólares con ocho centavos ($8,028.08) por concepto de cuotas de mantenimiento, derrama, intereses y honorarios de abogado.

Por tratarse del mismo asunto, ambos recursos fueron consolidados. Así las cosas, examinada la totalidad del expediente, el estado de derecho aplicable y por las razones que expondremos a continuación, *confirmamos* la *Sentencia* emitida por el TPI y se *deniega* el auto de *certiorari.*

**I.**

El 13 de junio de 2023, la parte apelada presentó una *Demanda* en cobro de dinero al amparo de la Regla 60 de Procedimiento Civil contra la parte apelante por la cantidad de seis mil ochocientos veintiocho dólares con cuarenta y ocho centavos ($6,828.48) por concepto de pagos vencidos de las cuotas de mantenimiento y derramas de una propiedad ubicada en la Urbanización Santa Teresita Park Boulevard. En esa misma fecha, el TPI convirtió el caso a uno de cobro de dinero bajo el procedimiento ordinario debido a que la codemandada María Isabel Rey González residía en los Estados Unidos.

Mientras, el 23 de agosto de 2023, la parte apelante presentó su *Contestación a la Demanda.* En su contestación, alegó que no procedía el cobro de dinero debido a que los Estatutos de la Asociación eran nulos y que el control de acceso de la urbanización no era legal. Luego de varios incidentes relacionados al descubrimiento de prueba, el 2 de febrero de 2024, la parte apelada presentó una *Solicitud de Sentencia Sumaria.* En síntesis, la parte apelada alegó que los hechos incontrovertidos del caso y el derecho aplicable no permiten otra conclusión que no sea que la parte apelante le adeuda a la parte apelada, al 2 de febrero de 2024, la cantidad de ocho mil veintiocho dólares con ocho centavos

($8,028.08) por concepto de cuotas de mantenimiento, derrama, intereses y penalidades y mil seiscientos cinco dólares con sesenta y dos centavos ($1,605.62) de honorarios de abogados.

En respuesta, el 12 de febrero de 2024, la parte apelante presentó una *Moción en Solicitud de Orden.* En su escrito, se limitó a alegar que existían controversias en cuanto al descubrimiento de prueba, por lo que no procedía la solicitud de sentencia sumaria. Posteriormente, el 6 de mayo de 2024, la parte apelante presentó su *Oposición a Solicitud de Sentencia Sumaria.* En esta ocasión, la parte apelante alegó que la *Solicitud de Sentencia Sumaria* debía ser declarada No Ha Lugar ya que la parte apelada no estableció la ausencia de controversia de hechos y no está conforme al ordenamiento jurídico. Así las cosas, las partes presentaron sus correspondientes réplicas y dúplicas en relación con la solicitud de sentencia sumaria.

Luego de varias instancias relacionadas al descubrimiento de prueba, el 1 de octubre de 2024, el TPI declaró *Ha Lugar* la *Moción de Sentencia Sumaria* y condenó a la parte apelante a pagarle a la parte apelada la cantidad de ocho mil veintiocho dólares con ocho centavos ($8,028.08) por concepto de cuotas de mantenimiento, intereses y derrama a la fecha del 2 de febrero de 2024, lo cual aumentaría cada mes y el veinte por ciento (20%) de honorarios de abogado.

Por su parte, el 14 de octubre de 2024, la parte apelada presentó un *Memorando de Costas y Desembolsos*, certificado por su representante legal, pero sin el juramento del Administrador de la Asociación Santa Teresita Park Boulevard. En su memorando, la parte apelada solicitó la cantidad de seiscientos veinte dólares con treinta y seis centavos ($620.36) en costas y desembolsos. Mientras, el 16 de octubre de 2024, en desacuerdo con la *Sentencia* dictada el 1 de octubre de 2024, la parte apelante presentó una *Moción de*

*Reconsideración*, la cual fue declarada *No Ha Lugar* el 29 de octubre de 2024.

Además, el 23 de octubre de 2024, la parte apelante presentó su *Oposición a Memorando de Costas y Desembolsos*, en la cual solicitó que se denegara el memorando por no haber sido juramentado. Finalmente, el 24 de octubre de 2024, el TPI notificó una *Resolución Interlocutoria* mediante la cual indicó que procedía el *Memorando de Costas y Gastos*, pues al haber sido presentado a través de la representación legal de la parte apelada, la juramentación no es requerida. En consecuencia, ordenó a la parte apelante el pago de quinientos setenta dólares con treinta y seis centavos ($570.36) a favor de la parte apelada por concepto de costas y gastos.

Inconforme, el 22 de noviembre de 2024, la parte apelante presentó un recurso de *Certiorari* en el cual alegó la comisión del siguiente error por parte del TPI:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, AL DECLARAR CON LUGAR EL MEMORANDO DE COSTAS PRESENTADO POR LA PARTE RECURRIDA Y ORDENARLE A LA PARTE PETICIONARIA EL PAGO DE COSTAS Y HONORARIOS, PESE A QUE DICHO MEMORANDO NO FUE JURAMENTADO, EN VIOLACION A LAS REGLAS DE PROCEDIMIENTO CIVIL QUE RIGEN SOBRE ESTE TIPO DE PROCEDIMIENTOS, Y A LAS NORMAS QUE GUIAN LA DISCRESION JUDICIAL A LA HORA DE IMPONER SANCIONES A LAS PARTES PERDIDOSAS.**

Posteriormente y por estar en desacuerdo con la *Sentencia* dictada el 1 de octubre de 2024, el 2 de diciembre de 2024, la parte apelante presentó un recurso de *Apelación*, mediante el cual alegó la comisión de los siguientes errores por parte del TPI:

> **(1) ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, AL CONCLUIR QUE, EN EL PRESENTE CASO, LA PARTE APELADA ACREDITÓ LA FACULTAD REPRESENTATIVA DEL SEÑOR ALBERTO GIMÉNEZ CRUZ PARA ACTUAR A NOMBRE DE DICHA PARTE.**

**(2) ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, AL CONCLUIR QUE, EN EL PRESENTE CASO, LA PARTE APELADA CUMPLIÓ CON LOS ESTATUTOS DE LA ASOCIACIÓN CUANDO LOS ESTATUTOS NUNCA FUERON APROBADOS CONFORME A DERECHO, POR LO QUE NO PROCEDÍA LA ACCIÓN DE COBRO DE CUOTAS EN CONTRA DE LOS APELANTES.**

**(3) ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, AL ABUSAR DE SU DISCRESIÓN Y LIMITAR EL USO POR LA PARTE APELANTE DE LOS MECANISMOS DE DESCUBRIMIENTO DE PRUEBA CONTRARIO AL PRINCIPIO DE LIBERALIDAD QUE NUESTRO ORDENAMIENTO PROCESAL RECONOCE PARA ESTOS PROCESOS.**

Por su parte, el 19 de diciembre de 2024, la parte apelante presentó su *Memorando en Oposición a Expedición de Auto de Certiorari Interlocutorio*. Además, el 7 de enero de 2025, presentó el correspondiente *Alegato de Oposición a Recurso de Apelación*. Con el beneficio de ambas comparecencias procedemos a resolver.

**II.**

**A. *Certiorari***

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *Pueblo v. Díaz de León*, 176 DPR 913 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez, supra*. Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de León v. AIG, supra*. Es decir, la característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *BPPR v. SLG Gómez-López*, 2023 TSPR 145, 213 DPR ___ (2023). No obstante, la discreción judicial para expedir o no el auto

de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez, supra.*

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari. Torres González v. Zaragoza Meléndez, supra.* En lo pertinente, la precitada disposición reglamentaria dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari,* o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago,* 176 DPR 559 (2009); *García v. Padró,* 165 DPR 324 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago,* 125 DPR 203 (1990). Así pues, un tribunal apelativo no intervendrá con las

determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *BPPR v. SLG Gómez-López, supra.* Véase, además, *Pueblo v. Rivera Santiago, supra*; *S.L.G. Flores, Jiménez v. Colberg,* 173 DPR 843 (2008).

### III.

Habida cuenta de que uno de los recursos ante nuestra consideración se trata de un *certiorari*, este tribunal intermedio debe determinar, como cuestión de umbral, si procede su expedición. En el presente caso, es la contención del apelante que, incidió el TPI al imponer el pago de costas y gastos a favor de la parte apelada, ello a pesar de que el correspondiente memorando no fue juramentado.

Como es sabido, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *BPPR v. SLG Gómez-López, supra.* No debemos obviar que, el adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago, supra.*

Así pues, puntualizamos, que el *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al., supra.* A esos efectos, la naturaleza discrecional del recurso de *certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones del foro primario, de cuyas determinaciones se presume su corrección.

Tras evaluar detalladamente el recurso presentado por el apelante, y luego de una revisión de la totalidad del expediente ante *nos*, es nuestra apreciación que no se configuran ninguna de las excepciones que justificaría la expedición del auto de *certiorari* al

amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*. Así, los fundamentos aducidos en el recurso presentado, no nos mueven a activar nuestra función discrecional en el caso de epígrafe. Esto, pues no nos encontramos ante una determinación que configure abuso de discreción, prejuicio, parcialidad o error craso y manifiesto que amerite nuestra intervención revisora.

Por consiguiente, resolvemos denegar el *certiorari* solicitado, pues no identificamos fundamentos jurídicos que nos motiven a expedir el mismo.

**IV.**

**A. Sentencia sumaria**

Como es sabido, la Regla 36 de Procedimiento Civil (32 LPRA Ap. V) regula todo lo relacionado a la moción de sentencia sumaria. *Cruz Cruz y otros v. Casa Bella Corp.*, 2024 TSPR 47, 213 DPR ___ (2024); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023). Dicho mecanismo procesal es utilizado en aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, la celebración de un juicio en su fondo no es necesaria en la medida que solo resta por dirimir determinadas controversias de derecho. *Oriental Bank v. Caballero García*, 212 DPR 671 (2023). Véase, además, *Acevedo y otros v. Depto. Hacienda y otros, supra*; *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021). Según ha resuelto nuestro Tribunal Supremo, un hecho material es aquel que puede alterar la forma en que se resuelve una reclamación, de acuerdo con el derecho sustantivo aplicable. *Cruz Cruz y otros v. Casa Bella Corp., supra.*

El propósito que persigue el mecanismo de la sentencia sumaria es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023). Véase, además, *Acevedo y otros v. Depto. Hacienda y otros, supra*; *SLG Fernández-Bernal v. RAD-MAN et al., supra*;

*Rodríguez Méndez et al. v. Laser Eye*, 195 DPR 769 (2016). Por tanto, quien promueva la sentencia sumaria deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. *Oriental Bank v. Caballero García, supra.* Así, la Regla 36.3 de Procedimiento Civil (32 LPRA Ap. V), establece cual será el contenido y los requisitos de forma que deberán observarse tanto en la solicitud de sentencia sumaria que inste la parte promovente, como en la oposición que pueda presentar la parte promovida. *Acevedo y otros v. Depto. Hacienda y otros, supra*; *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020).

Por ser la sentencia sumaria un remedio discrecional, el principio rector para el uso de este mecanismo es el sabio discernimiento del juzgador, ya que mal utilizada puede privar a una parte de su día en corte, principio elemental del debido proceso de ley. *Jusino et als. v. Walgreens*, 155 DPR 560 (2001). Así pues, un tribunal podrá emitir una sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto a las declaraciones juradas – según fueran ofrecidas – surge que no existe una controversia real sustancial en cuanto a ningún hecho material, restando entonces resolver la controversia en estricto derecho. *Acevedo y otros v. Depto. Hacienda y otros, supra*; Regla 36.3 de Procedimiento Civil, *supra*. Así pues, resulta esencial que de la prueba que acompaña la solicitud de sentencia sumaria surja de manera preponderante que no existe controversia sobre los hechos medulares del caso. *Cruz Cruz y otros v. Casa Bella Corp., supra.*

Así, para sostener u oponerse a una petición de sentencia sumaria las partes podrán presentar, entre otras, las siguientes piezas de evidencia: certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas o affidavits, y hasta prueba

oral. *Acevedo y otros v. Depto. Hacienda y otros*, *supra,* citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 318. Nuestro máximo Foro ha sido enfático en que, cuando una parte acompaña su solicitud u oposición de sentencia sumaria de una o varias declaraciones juradas, estas deben cumplir con las disposiciones especiales pautadas en la Regla 36.5 de Procedimiento Civil (32 LPRA Ap. V). *Acevedo y otros v. Depto. Hacienda y otros, supra.*

A esos efectos, se requiere que las declaraciones juradas demuestren afirmativamente el conocimiento personal y la calificación del testigo, también se requiere que se presenten únicamente hechos admisibles como evidencia en un juicio. *Hernández Colón, op. cit.* pág. 319. Por consiguiente, cuando la solicitud de sentencia sumaria está apoyada en una o varias declaraciones juradas, dicha prueba no podrá contener solo conclusiones sin hechos específicos que las sustenten. *Acevedo y otros v. Depto. Hacienda y otros, supra.* Lo anterior, serían meras conclusiones reiterando las alegaciones de la demanda y, por tanto, prueba insuficiente y sin valor probatorio. *Íd.* citando a J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. I, págs. 615-616.

El Tribunal Supremo de Puerto Rico ha sido enfático en que, el hecho de que la parte promovida no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica que dicha moción procederá automáticamente si efectivamente existe una controversia sustancial sobre hechos materiales. *Acevedo y otros v. Depto. Hacienda y otros, supra*; *SLG Fernández-Bernal v. RAD-MAN et al., supra.* Ahora bien, nuestro máximo Foro ha reiterado que una moción de sentencia sumaria no procederá cuando: (1) existen hechos materiales controvertidos (2) hay alegaciones afirmativas en

la demanda que no han sido refutadas (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material, o (4) como cuestión de derecho no procede. *Acevedo y otros v. Depto. Hacienda y otros*, *supra*. Véase, además, *SLG Fernández-Bernal v. RAD-MAN et al.*, *supra*; *Vera v. Dr. Bravo*, 161 DPR 308 (2004).

De igual forma, el mecanismo de sentencia sumaria no es recomendable cuando existen controversias de hechos materiales sobre elementos subjetivos de intención, propósitos mentales o negligencia. *Cruz Cruz y otros v. Casa Bella Corp.*, *supra*. Véase, además, *Acevedo y otros v. Depto. Hacienda y otros*, *supra*; *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656 (2017); *Ramos Pérez v. Univisión*, 178 DPR 200 (2010); *Soto v. Hotel Caribe Hilton*, 137 DPR 294 (1994). Sin embargo, nada impide que se utilice el mecanismo de sentencia sumaria en reclamaciones que requieran elementos subjetivos o de intención cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge la inexistencia de controversia en torno a los hechos materiales. *Cruz Cruz y otros v. Casa Bella Corp.*, *supra*.

Ahora bien, una vez presentada una moción de sentencia sumaria y se sostenga de la forma provista en la Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede. Véase, Regla 36.3(c) de Procedimiento Civil, *supra*.

Además, puntualizamos que al momento de atender una solicitud de revisión de sentencia sumaria los foros apelativos estamos llamados a "examinar el expediente de *novo* y verificar que las partes cumplieron con las exigencias" pautadas en las Reglas de

Procedimiento Civil. *Acevedo y otros v. Depto. Hacienda y otros, supra; SLG Fernández-Bernal v. RAD-MAN et al., supra; Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010 (2020). Según ha establecido el Tribunal Supremo, este Tribunal está limitado a: (1) considerar los documentos y argumentos que se presentaron ante el foro primario (lo cual implica que, en apelación, los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el tribunal de instancia ni esbozar nuevas teorías); (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta. *González Meléndez v. Mun. San Juan et al., supra.* Así pues, los foros apelativos estamos en la misma posición que los tribunales de instancia y se utilizan los mismos criterios para evaluar una solicitud de sentencia sumaria. *Íd.* Véase, además, *Cruz Cruz y otros v. Casa Bella Corp., supra.*

### B. Derecho de contratos

El Artículo 1041 del Código Civil de 1930 (31 LPRA ant. sec. 2991) establece que toda obligación consiste en dar, hacer o no hacer una cosa.[1] Así pues, una de las fuentes de las obligaciones son los contratos. Artículo 1042 del Código Civil de 1930 (31 LPRA ant. sec. 2992).

Cónsono con esto, nuestro ordenamiento jurídico permite la libertad de contratación; siempre y cuando, los pactos, cláusulas y condiciones no sean contrarios a la ley, la moral o al orden público. Artículo 1207 del Código Civil de 1930 (31 LPRA ant. sec. 3556). Si se cumple con lo dispuesto, el contrato tendrá fuerza de ley entre las partes, por lo que ambas se obligan al cumplimiento de lo allí pactado y de sus consecuencias. Artículos 1044 y 1210 del Código

---

[1] Aunque el Código Civil citado, Código Civil de Puerto Rico de 1930, fue derogado por la Ley Núm. 55-2020, conocido como Código Civil de Puerto Rico, hacemos referencia al primero por ser el que estaba vigente a la fecha de la controversia de autos.

Civil de 1930 (31 LPRA ant. sec. 2995 y 3375). En adición, "cuando los términos de un contrato son claros y no crean ambigüedades, estos se aplicarán en atención al sentido literal que tengan". *C.F.S.E. v. Unión de Médicos,* 170 DPR 443 (2007).

A su vez, los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o a prestar algún servicio. Artículo 1206 del Código Civil de Puerto Rico (31 LPRA ant. sec. 3371)*; García Reyes v. Cruz Auto Corp.,* 173 DPR 870 (2008); *Collazo Vázquez v. Huertas Infante,* 171 DPR 84 (2007). Así pues, la existencia de un contrato se constata cuando concurren los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato; y (3) causa de la obligación que se establezca. Artículo 1213 del Código Civil de Puerto Rico (31 LPRA ant. sec. 3391); *García Reyes v. Cruz Auto Corp., supra,* a la pág. 885; *Rivera v. PRAICO,* 167 DPR 227 (2006). Una vez concurren las condiciones esenciales para su validez, un contrato es obligatorio "cualquiera que sea la forma en que se haya celebrado". Artículo 1230 del Código Civil de Puerto Rico (31 LPRA ant. sec. 3451).

En cuanto a la interpretación de los contratos, nuestro ordenamiento jurídico dispone que "cuando los términos de un contrato son claros y no crean ambigüedades, estos se aplicarán en atención al sentido literal que tengan". *C.F.S.E. v. Unión de Médicos,* 170 DPR 443 (2007).  Se concede, pues, una presunción a favor del sentido literal del contrato. No obstante, el Código Civil establece que "[s]i las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas." Artículo 1233, Código Civil (31 LPRA ant. sec. 3471); *Suárez Figueroa v. Sabanera Real, Inc.,* 173 DPR 694 (2008). La intención de las partes es el criterio fundamental para fijar el alcance de las obligaciones contractuales. Tan fundamental es este criterio que el Código Civil

proclama su supremacía al disponer que, *si no se puede determinar la voluntad de los contratantes con la mera lectura literal de las cláusulas contractuales, se deberá recurrir a los actos anteriores, coetáneos y posteriores al perfeccionamiento de los contratos.* Artículo 1234, Código Civil (31 LPRA ant. sec. 3472); *S.L.G. Irizarry v. S.L.G. García,* 155 DPR 713 (2001).

Respecto a los términos de los contratos, el Código Civil dispone que cualquiera que sea la generalidad de ellos, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquellos sobre lo que los interesados se propusieron contratar. Artículo 1235, Código Civil (31 LPRA ant. sec. 3473).

## C. El descubrimiento de prueba

La Regla 23.1 de Procedimiento Civil (32 LPRA Ap. V), regula el alcance del descubrimiento de prueba. En lo pertinente, la mencionada Regla dispone como sigue:

> *"El alcance del descubrimiento de prueba, **a menos que sea limitado de algún modo por el tribunal**, en conformidad con las disposiciones de estas reglas, será como sigue:*
>
> *(a) En general. Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, **que sea pertinent**e al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluso la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documentos u otros objetos tangibles, y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible..."*

Como sabemos, el descubrimiento de prueba - dentro del proceso civil adversativo - procura: (1) precisar los asuntos en controversia (2) obtener evidencia para ser utilizada en el juicio y evitar las sorpresas en esta etapa de los procedimientos (3) facilitar la búsqueda de la verdad y (4) perpetuar la evidencia. Incluso,

permite que "las partes puedan prepararse para el juicio, de forma tal que tengan la oportunidad de obtener la evidencia necesaria para evaluar y resolver las controversias del caso." *Rivera y otros v. Bco. Popular*, 152 DPR 140 (2000).

Los Tribunales de Instancia tienen gran discreción para regular el ámbito del descubrimiento de prueba. *Rivera y otros v. Bco. Popular, supra.* A esos efectos, los tribunales pueden limitar el alcance y los mecanismos de descubrimiento de prueba que habrán de usarse, si con ello se adelanta la solución de la controversia de forma rápida, justa y económica. *Alfonso Brú v. Trane Export, Inc.*, 155 DPR 158 (2000).

Cónsono con lo anterior, nuestra última instancia judicial ha reconocido dos limitaciones al descubrimiento de prueba. Estos son, que la información objeto del descubrimiento de prueba no sea privilegiada y que la misma sea pertinente a la controversia. *Rivera y otros v. Bco. Popular, supra.* Véase, además, *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716 (1994); O*rtiz Rivera v. E.L.A., National Ins. Co*, 125 DPR 65 (1989); *General Electric v. Concessionaires, Inc.*, 118 DPR 32 (1986).

En sintonía con esto, el concepto de pertinencia para propósitos del descubrimiento de prueba, aunque impreciso, debe ser interpretado en términos amplios. *General Electric v. Concessionaires, Inc.*, *supra.* Así pues, para que una materia pueda ser objeto de descubrimiento, basta con que exista una posibilidad razonable de relación con el asunto en controversia. *Íd.* No obstante, esto no significa que el ámbito del descubrimiento de prueba sea ilimitado.

### D. Abuso de discreción

Nuestro Tribunal Supremo ha establecido que, los tribunales apelativos no interferirán con las facultades discrecionales de los foros primarios, exceptuando aquellas circunstancias en las que se

demuestre que estos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. v. Arcos Dorados et al., supra*; *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465 (2022). Por lo cual, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. *Rivera et al. v. Arcos Dorados et al., supra*; *Luch v. España Service Sta.,* 117 DPR 729 (1986).

En lo pertinente, nuestro máximo Foro ha definido la discreción judicial como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Rivera et al. v. Arcos Dorados et al., supra*. Véase, además, *Bco. Popular de P.R. v. Mun. de Aguadilla,* 144 DPR 651 (1997). Así pues, el ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad. *Rivera et al. v. Arcos Dorados et al., supra.* Conforme a lo anterior, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho. *Íd.* Véase, además, *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013).

Asimismo, se ha señalado que un tribunal abusa de su discreción:

> [C]uando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en este, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros, supra; SLG Zapata-Rivera v. J.F. Montalvo, supra.*

## V.

**(1) ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, AL CONCLUIR QUE, EN EL PRESENTE CASO, LA PARTE APELADA ACREDITÓ LA FACULTAD REPRESENTATIVA DEL SEÑOR ALBERTO GIMÉNEZ CRUZ PARA ACTUAR A NOMBRE DE DICHA PARTE.**

En su primer señalamiento de error, la parte apelante alega que erró el TPI al concluir que la parte apelada acreditó la facultad representativa del señor Alberto Giménez Cruz (Giménez Cruz) para actuar a nombre de dicha parte en el presente caso. La parte apelante sustenta su señalamiento en que la parte apelada nunca presentó resolución corporativa acreditando las facultades y la capacidad del señor Giménez Cruz para comparecer ante el Tribunal, ni evidencia de aprobación de alguna enmienda al reglamento a esos efectos. Además, aduce que, por esa razón, se debe concluir que la facultad conforme al contrato de servicios de administración era exclusivamente para PROMMA Private Corp. No le asiste la razón.

De una revisión de *novo* del expediente del caso de autos, surge de los anejos de la *Réplica a Oposición de Sentencia Sumaria*[2], una declaración jurada del señor Giménez Cruz en la que indica que el licenciado Juan Ramón Cancio, Presidente de la Junta de la Asociación, le dio instrucciones verbales para gestionar los asuntos legales de la Asociación. Además, surge del Contrato de Servicios de Administración, firmado entre el señor Giménez Cruz, como Presidente de PROMMA Private Corp. y el Presidente de la Junta de Asociación donde se establece el rol del administrador. Entre estos se encuentran: (a) Realizar gestiones de cobro, escritas y telefónicas, a los Propietarios que adeuden dos (2) meses o más, así como implementar el procedimiento autorizado, si alguno, para la suspensión de servicios a los Propietarios que no efectúen el pago, tales como desactivación de sellos y (b) Siguiendo instrucciones de la Junta de Directores, referirá y coordinará con el abogado designado por la Asociación, aquellos casos de Propietarios contra quienes no haya sido efectivos las gestiones administrativas de

---

[2] Apéndice del Apelante, páginas 989-1047.

cobro (incluyendo la suspensión de los servicios permitidos), para el inicio de los procedimientos legales/judiciales de cobro de cuotas de mantenimiento.[3]

Así pues, conforme a la interpretación de los contratos discutida anteriormente, coincidimos con el foro sentenciador en que a pesar de que el Contrato de Servicios no dice específicamente que Giménez Cruz puede representar a la parte apelada en reclamaciones de cobro de dinero contra los propietarios en una acción judicial, sí se desprende de una interpretación integral de éste que concluir, como pretende la parte apelante, que el administrador está vetado de llevar a cabo gestiones de cobro ante el Tribunal sería una contradicción a las cláusulas del Contrato de Servicio. En atención a ello, el primer error no fue cometido.

> **(2) ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, AL CONCLUIR QUE, EN EL PRESENTE CASO, LA PARTE APELADA CUMPLIÓ CON LOS ESTATUTOS DE LA ASOCIACIÓN CUANDO LOS ESTATUTOS NUNCA FUERON APROBADOS CONFORME A DERECHO, POR LO QUE NO PROCEDÍA LA ACCIÓN DE COBRO DE CUOTAS EN CONTRA DE LOS APELANTES.**

En su segundo señalamiento de error, alega la parte apelante que erró el TPI al concluir que la parte apelada cumplió con los estatutos de la Asociación. Es la contención de la parte apelante que dichos estatutos nunca fueron aprobados conforme a derecho, por lo que no procedía el cobro de las cuotas. Según señaláramos anteriormente, la *Sentencia* apelada es producto de una *Solicitud de Sentencia Sumaria* presentada por la parte apelada. En atención a ello, antes de atender el segundo señalamiento de error, debemos examinar el expediente de *novo* y verificar que las partes cumplieron con las exigencias pautadas en las Reglas de Procedimiento Civil.

---

[3] Apéndice del Apelante, página 1042.

Surge del expediente de autos que la vigencia del Reglamento está respaldado por la declaración jurada del señor Giménez Cruz, según lo requieren las Reglas de Procedimiento Civil. Véase Anejo 58, *Solicitud de Sentencia Sumaria*, 220-224 y 229-243. No obstante, del expediente no surge prueba ni declaraciones juradas que controviertan la vigencia del mencionado Reglamento. Dicho de otro modo, la parte apelante descansó solamente en sus aseveraciones, pues no presentó contradeclaraciones juradas ni contra documentos que pusieran en controversia la vigencia del Reglamento en cuestión. Procedía, por lo tanto, determinar que el Reglamento aplicado a la controversia de autos estaba vigente. El segundo señalamiento de error no fue cometido.

**(3) ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, AL ABUSAR DE SU DISCRESIÓN Y LIMITAR EL USO POR LA PARTE APELANTE DE LOS MECANISMOS DE DESCUBRIMIENTO DE PRUEBA CONTRARIO AL PRINCIPIO DE LIBERALIDAD QUE NUESTRO ORDENAMIENTO PROCESAL RECONOCE PARA ESTOS PROCESOS.**

Por último, alega la parte apelante que el TPI abusó de su discreción al limitar el uso de los mecanismos de descubrimiento de prueba. En su discusión, arguye que, debido a esa limitación, no pudo presentar evidencia para refutar la vigencia del Reglamento aplicado. No le asiste la razón.

Del expediente ante nuestra consideración surge que, el 19 de septiembre de 2023, el TPI emitió una *Orden* mediante la cual se le concedió a las partes hasta el 29 de diciembre de 2023, para culminar el descubrimiento de prueba[4]. No obstante, el 1 de febrero de 2024, el TPI extendió el descubrimiento de prueba a los únicos efectos de atender una controversia sobre contestaciones al interrogatorio y producción de documentos que se le cursó a la parte

---

[4] Anejo del Apelante, pág. 175

apelada[5].  Sin embargo, el 20 de marzo fue 2024, la parte apelante emitió citaciones para deponer al Presidente y Secretaria de la Asociación fuera del plazo autorizado por el TPI.  En consecuencia, el 21 de marzo de 2024, el TPI dejó sin efecto dichas citaciones y concluyó que las mismas no estaban relacionadas con la controversia del caso y que el descubrimiento de prueba había culminado[6].  Además, el 24 de abril de 2024 y el 7 de mayo de 2024, la parte apelante intentó reabrir el descubrimiento de prueba solicitando certificaciones relacionadas con los estatutos de la Asociación.  Ante ello, el TPI resolvió que las cuestiones relacionadas con los estatutos de la Asociación no eran pertinentes al caso de cobro de dinero[7].

Sobre el particular, debemos recordar que los foros primarios gozan de amplia discreción para regular el descubrimiento de prueba, pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes. *Rivera et al. v. Arcos Dorados et al.*, *supra*; *Cruz Flores et al. v. Hosp. Ryder et al.*, *supra.* Por esa razón, este Tribunal de Apelaciones no debe intervenir con dicha discreción; salvo que medie prejuicio, parcialidad o error manifiesto en la aplicación de una norma procesal o sustantiva. *Rivera Durán v. Banco Popular de P.R.*, *supra*, págs. 154-155.  Examinado la totalidad del expediente, este Tribunal no encuentra que haya mediado prejuicio, parcialidad o error manifiesto al limitar el descubrimiento de prueba en este caso, el cual versa sobre un cobro de dinero.  Así pues, en cuanto a limitar el mecanismo de descubrimiento de prueba de deponer al Presidente y Secretaria de la Asociación en el presente caso, **para auscultar la posibilidad** de que el Reglamento no fue aprobado conforme a

---

[5] Anejo del Apelante, pág. 203
[6] Anejo del Apelante, pág 606.
[7] Apéndice del Apelante, pág. 973

derecho y para solicitar certificaciones a esos efectos, debemos concluir que no abuso de su discreción el foro recurrido al denegarla. Estas solicitudes se realizaron luego de que el descubrimiento de prueba había culminado. Por esa razón, no intervendremos con tal determinación. El tercer error no fue cometido.

**VI.**

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, *denegamos* la expedición del auto de *Certiorari* y *confirmamos* la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez concurre sin escrito por entender que el Código Civil que aplica es predominantemente el del 2020. La deuda que se interesa cobrar es desde julio 2020. Ver Demanda.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones